Good morning, Your Honors. May it please the Court, I am Laurie Jones appearing on behalf of Petitioner Jimmy Moody. This case is here for an argument regarding actual innocence. It is our position and Mr. Moody's position that he is actually innocent of the charges that he was found guilty of in 1990. Is there any Supreme Court case which suggests that the factual innocence claim, standing alone, is sufficient for habeas relief? Standing alone? No, Your Honor. Well, that's all we have here. Well, we have Herrera and we have... I've read Herrera, but Herrera doesn't say anything different than that. So I looked for any Supreme Court case that I could find that would suggest that the actual innocence claim itself, standing alone, would be enough for habeas relief, and I couldn't find it. In fact, I found quite the opposite, that the Supreme Court says we take no position on that. I understand, Your Honor, but the position we're taking is it's not forestalled. Well, how can it not be forestalled if there's no Supreme Court case that suggests it? Well, there has to be new... There has to be a Supreme Court case to suggest it, or you're making the argument only to just go talk to those nine. No, this is enough for me. I mean, if you want to go talk to those nine, go for it. No, Your Honor. All I'm trying to say to you is there's nothing left to say here. Unless the Supreme Court tells me what to do, I haven't got anything that I can do for you. I disagree, Your Honor. I think what we have here is in Herrera and Perkins... Herrera and Perkins don't say anything to the contrary to what I've suggested. They don't, but they also say the Court has flexibility and discretion, and I think that is... I mean, I've read both, and I know who wrote those opinions, and I read how close they want to get to the line in those opinions. But the bottom line is if you get to the Supreme Court, there's nothing to suggest it's true. But I don't think we can punish Mr. Moody for that. Well, I don't. I'm not trying to punish him. I'm just trying to say is there anything I can do for habeas relief here. I'm not punishing him. If he was punished, it was only on his own conduct or what an underlying judge did. Well, I think the underlying conduct wasn't necessarily that the judge did anything wrong. I just think that the jurors in that case didn't have all of the facts. They didn't have all of the evidence, and that is why this case has been going on for 27 years. Mr. Moody has time and time and time again presented his position that he did not do these things and that actual innocence is his last hope. And this court asked on prior occasion for us to discuss it. The court gave us a lot of leeway with Mr. Peters when he was here, and I'm asking the court to understand that it is our position with Herrera and McTeague and Perkins that this court does have discretion, that this court is left with a great deal of leeway, and that this court can grant. What would they do if we were dealing with a direct appeal? We don't have all that discretion on a habeas case. It's got to be contrary to clearly established Supreme Court law. Well, Your Honor, I think... And there isn't, as you said, there's no case that holds that a freestanding claim of actual innocence is a basis for relief. I agree, Your Honor, but I don't think it is our position that it doesn't have to be freestanding. I think it's an issue that is there, and there is no perfect slot to slip it into, but that does not mean that he isn't entitled to the presentation of the evidence. And that's what we're asking for. That's what Mr. Moody is seeking from this court, the ability to go back and have a hearing so that the test of the credibility of these witnesses who perjured themselves can be tested. I'm worried about the hearing. We in Carragher v. Stewart, which was written by one group of our court, said, Well, we know what the Supreme Court has said, but we'll just assume that it exists. And then they say after assuming it exists, they articulated a standard of proof, saying that the petitioner had to affirmatively prove that he is innocent, not just demonstrate an insufficience of evidence to convict. On AEDPA review, this is the problem that I have with your argument. If I go to the actual innocence and I just assume it, as they did in Carragher, then it seems to me California rejected the same claim. And under AEDPA review, how am I going to go around that? Well, and that is the problem, Your Honor. Everyone is, it's not a legal term, but they're all kicking the can down the road. We're not kicking the can. All we're saying is, given our standard of review, how do we do it? Because the bottom line is, if I step back, and I do like Carragher did, and say, Okay, I'm going to say it's okay even though the Supreme Court hasn't said it's okay, then my next standard of review is, where do I get this case from? The California State Court. What review do I owe to the California State Court? AEDPA review. What does that mean? They already discussed this issue and said there is no actual innocence here. And there is nothing that I have to be able to go around that. Are you saying in this court they said there's no actual innocence? Oh, I said in the California court they said that. But they didn't actually test the question of actual innocence. They were stuck on procedural grounds. They rejected the similar claim that you are making, that the delay in producing the evidence weighed against his credibility. They said the delay in producing the evidence weighs against the credibility and ultimately concludes it's insufficient to sustain a claim of actual innocence. And they weren't concerned with the question of actual innocence. They were concerned with the question of delay. That's what they were concerned with. Oh, I understand. That's a way to argue it. But what they really said was it's taken so long to get here, we can't suggest that there's any evidence in this record to sustain this claim of actual innocence because we can't find that because it's taken so long that it's credible and therefore we're not going to have an actual innocence claim. And I understand what this court is looking at. However, the door remained open for Mr. Moody. The door remained open because those cases, I read them, Your Honor, I read them over and over again and I found myself in a time warp. If you don't do it within a certain time, you're forestalled and your question of actual innocence is never tested. And everybody is bouncing this case back and forth for those issues and this court finally said, look, come in and talk to us about actual innocence. And that was our hope that this court wanted to hear about his actually being innocent. So what is the evidence of actual innocence? Thank you, Your Honor. In this case, the proof is that there were seven precipiate witnesses. There's two shootings over a three-day period of time. Those cases were joined together. Those seven witnesses, all but one, have recanted. But there are still witnesses whose testimony has not been recanted. That's one. Mr. Jones, Your Honor, everyone else in this case has recanted. And there was one recanted. Mr. Polite? He has recanted. That's not before this court. I do have it with me. We have to go with the record that we have here. Well, the court last time specifically asked about Mr. Polite when Mr. Peters was here. And they stated the case then, and I didn't want to come here today. I can't lie to you. We can't add to the record. Okay. Well, also, I can't misrepresent. Because we have to look at the record that the California court was looking at. And I understand that, Your Honor. I just don't want to misrepresent the facts. I don't want to stand up here and argue that there were seven and that five have recanted. Well, even if there was one, even if there was still only one witness. And I will argue Mr. Jones' position. Mr. Jones said that the shooting happened and he ran. And on direct, he testified one way. But on cross, he admitted to lying. And so when you combine, as these justices asked us to do, the totality of the circumstances, then in the totality of the circumstances, you have Mr. Moody presenting an alibi. You have this note that came into evidence that never should have come into evidence. You have Tillett's testimony, which was read in at trial. Even under the actual innocence claim, inadmissible evidence can be considered. I'm sorry. I didn't hear you. Even where there's an actual innocence claim to get around a procedural forfeiture, inadmissible evidence can be considered. Yes. It can be considered. And I'm fine with that, Your Honor. But she asked for me to present on the actual innocence claim. And in this case, would a jury be able to find reasonable doubt? And it is our position that they would. Because if you look at each of the precipiate witnesses' recantation, then you're left with Mr. Jones, who lied during his testimony, a note that has no actual relevance to anything. That's the sufficiency of the evidence standard. And the actual innocence standard is way higher than that. Right. But, Your Honor, in this case, the actual innocence standard is met. He puts on- I've heard you say that, and I'll even give you credit for it. But what's my standard of review on that? Your standard of review, Your Honor, is that a petitioner, at the very least, be required to show that based on proffered, newly discovered evidence and the entire record before the jury that convicted him, no rational trier of fact could find proof- So no reasonable jurist could have ruled against the innocence claim. Are you saying that based- I mean, I read your brief and I read their brief. I cannot say that no reasonable jurist could have ruled against that innocence claim based on the briefing. Well, Your Honor, obviously we disagree. Oh, I know you disagree. You've got a point of view, they've got a point of view. Yes. Yes. And I'm supposed to, based on briefing alone, decide that. So that's why I stepped back and said, well, isn't this an Edpa claim? Didn't the California Court of Appeal have the opportunity to do this? In this case, it wasn't even the Court of Appeal. It was the California Superior Court who had heard the case. Yes. So this was the judge who had heard the case saying, there's no way I can suggest that there was an actual innocence claim based upon the evidence that they're presenting because it's so old and I can't test its credibility. And, Your Honor, I'm sorry, I'm not aware that Judge Fulgoni- Well, the California Superior Court, the same court. Well, no one's ever heard the argument. Everyone keeps kicking it down the road. And that's why Mr. Moody is so passionate about this, Your Honor. He just wants a chance for someone to hear the evidence, send it back, let the judge and the superior court listen to each of these witnesses, test their credibility, weigh that in the totality of the circumstances, and then make a ruling. Well, the court has, I mean, when you say heard the evidence, you mean live. But the court has considered the evidence through way of declaration. I agree. I know you have, Your Honor. And I think you've exceeded your time. Thank you, Your Honor. All right. Thank you, Counsel. May it please the Court, Kenneth Byrne, Deputy Attorney General, on behalf of the Respondent. I think that when you look at this case, it is important to remember that in non-capital cases, the U.S. Supreme Court has never clearly established that there's a freestanding claim of actual innocence. But we do have a certificate of appealability that we are here on, and the certificate was given on the issue of whether or not actual innocence was shown. Correct. And I briefed that, and I'm prepared to talk about it. So if we assume. The difficulty I have is say we have a case where there is absolutely no doubt that the individual is innocent, DNA evidence or something that no one can challenge establishes the actual innocence. Is it your view that our system of justice does not provide an avenue at this stage of the proceedings for an actual innocent person to be relieved of the conviction? I think in this proceeding, in an AEDPA case, the answer is no.  California does, Your Honor. So the California courts recognize a freestanding claim of innocence as a basis for relief. Correct. And also I would like to say that even aside from the court system, recently the Los Angeles District Attorney's Office established a whole unit called the Conviction Review Unit that reviews claims of actual innocence. And recently that office ordered that a petitioner be released. His name was Raymond Jennings. He had been convicted of murder. It was a case I worked on. And Mr. Jennings is free today walking the streets. He's a millionaire. But there is a valid, you know, meaningful opportunity for these claims to see the light of day. But it's just not here. It's just not here? Just not here. I have to tell you that I would not be comfortable being part of a justice system that would tolerate a person who is actually innocent not being able to have relief. I agree, Your Honor. I do know of another case where the District Attorney's Office filed a habeas petition where they were convinced that a defendant was actually innocent. The District Attorney's Office filed a habeas petition in the Superior Court asking that the petitioner be released from prison immediately. That gentleman's name was Javier Obando. That was another case I worked on. That was part of the Rampart scandal. So my point is I think that the prosecutor is acting in good faith and I think that the California State Court is acting in good faith in giving these claims close scrutiny. So I agree. So if the California State Court does allow for this actual innocence claim on its own, then frankly this petitioner could bring that claim in the California State Court, right? He could and he did, Your Honor. In 2006, he filed a habeas petition in the Superior Court, and the Superior Court said two things. Number one, it says, hey, you're 16 years getting here. That's too long. But alternatively, they said, I'm going to go through the declarations. The judge did go through the declarations, all of them. And he said, I find these declarations insufficient to warrant either an evidentiary hearing or a new trial. And so, you know, that claim was scrutinized closely. And then the California Supreme Court denied habeas review as well. So you look through to what the Superior Court did. So the state courts did review that claim on the merits. They obviously weren't concerned with AEDPA 2254. That wasn't the lens they were reviewing the case through. But the point is, that claim got close scrutiny, and now that we're in this forum, AEDPA and 2254, it's a different analysis. And I have to say that I do think that in non-capital cases, until the Supreme Court says otherwise, there's just not an avenue in this type of proceeding, but there are other ways to proceed. I believe that actual innocence could be a basis for a pardon request before the governor. So there are, and I certainly agree with Judge Rawlinson, I wouldn't feel comfortable if I knew that the petitioner was innocent. I wouldn't be standing here saying, well, too bad. It took him too long. You know, I would certainly be concerned about that, and I would try to see that he got out of prison. I don't think that that's shown by the declarations in this case. And if the court would like me to kind of address the three that I think are the most important, I'd be glad to do that. So in terms of the declarations that were submitted to the district court, and the court was correct as to both the murder and then the attempted murders a couple of days later, the record before the district court shows that there was at least one witness who's never recanted. That was Jimmy Lee Jones on the murder, and that was Eric Polite for the attempted murders a couple of days later. But of the witnesses, the seven declarations that we're talking about, four were by new witnesses who did not testify at trial, three were by witnesses who testified at trial, and actually Mr. Tillett did not testify at trial. He wasn't available. They read his preliminary hearing transcript testimony where he identified the petitioner as the shooter in the murder. But when you look at the declarations, I think that the reason that the superior court found them so lacking was when you go through them, and again I'm talking about the witnesses who testified at trial, Mr. Tillett, the witness to the murder, said in his declaration, I cannot say whether or not Moody did or did not shoot at us. So he positively identified the petitioner at the preliminary hearing, read the testimony at the trial, and in his declaration he doesn't say that it wasn't Moody. He doesn't say that it was somebody else. It's just that 16 years after the shooting he says, I can't say whether it was Moody or not. So I don't think that that's affirmative evidence of innocence. In Herrera and the other cases, they talk about if there is such a freestanding claim in capital cases, capital cases, this is a non-capital case. But if this is a capital case, the standard is one that's extraordinarily high and truly persuasive. And so when you look at the Carragher case, in Carragher, which was another capital case, the key prosecution witness came into court and said, it wasn't Carragher, it was me. I'm the one that did it. And the on-panel of this court said, that's not good enough. And so in a case where somebody like Mr. Tillett is equivocal and doesn't even implicate his own penal interests, if it wasn't enough in Carragher, how in the world can it be enough in this case? And then when you look at two witnesses for the attempted murders two days later, we have two different shootings, the murder and then the attempted murders on New Year's Day, 1990. So Mr. Howard said about the second shooting, I didn't see the shooter. Now he did identify Moody at trial, and then it's certainly of concern that 16 years later he says, I didn't see the shooter. That doesn't look good, but is that affirmative evidence of proof of innocence? No. In Jones v. Taylor, which is a relatively recent decision from this court, not a death penalty case, it was a child molestation case, this court said something that I thought was interesting, which is witness recantation is not affirmative evidence of innocence. It's just recantation. And so all the time witnesses recant, for example, by the time of trial, especially in gang cases like this one. So if these witnesses had recanted at trial, if they said at trial, I don't know who did it, they would have been impeached with their out-of-court identifications of the petitioner, their pretrial identifications. That would have been a heck of a question for the jury to resolve. How would they have resolved it? I don't know. But I know that it would pass sufficiency muster because we have cases like that all the time. The jury, when you review the evidence in light and most favorable to the judgment, the jury is entitled to believe the out-of-court identification rather than the in-court recantation. And if it's not enough to get by sufficiency review, it sure as heck not enough to get by the extraordinarily high standard, the truly persuasive evidence that the Supreme Court has said is required in capital cases. The last declaration I just wanted to mention really briefly of the recanting, so-called recanting trial witnesses, was Mr. Hubbard, and he did not identify the petitioner at trial. So the Superior Court kind of gave his declaration short shrift. The last thing I wanted to say before I sat down is, when you look at these cases, I found it confusing when I was working on this brief, but it's really important to compartmentalize the schloop, miscarriage of justice, gateway type of cases. I argued this case a couple years ago when the issue was the statute of limitations, and the issue then was the McQuiggan case. So there, the standard is lower. In a case where the issue is, is there a freestanding claim, if you get by the lack of Supreme Court precedent on point, which is a problem, which by the way is the only reason that the district court ruled in this case. The district court never even bothered to go to the declarations because it said it would be futile and a waste of time. But once you get past that point, you have to look at the declarations, and they're just not sufficient. But the point is, they would have to affirmatively prove actual innocence. And all the capital cases, and I briefed this, I think, in some detail in my briefs, the House case, the Carragher case, the Jackson case from this court, all the cases that have applied this test in a capital context have looked at showings that were much stronger than here. DNA evidence in the House. Jackson, I think, had to do with new medical testimony. All those cases found it insufficient to meet that standard, and the evidence was better than it was here. So if it wasn't good enough there, I certainly don't think it's good enough here. So I just think that, number one, this court should remember that under EDPA it's constrained in the lack of Supreme Court precedent, and number two, even if the court wanted to reach the declarations, the showings are insufficient. So unless the court has questions, I'll submit. All right, thank you, counsel. It appears not. Counsel, we'll give you one minute for rebuttal. Please be brief. Thank you, Your Honors. I would just address the actual innocence in the declarations. Mr. Lewis, I'm sorry, Mariana Lewis, is the most impressive of all the declarations we have. She gave her statements over a period of time, and she discussed the breadth and the width of the fear factor and the gang influence that was going on at the time. And when you combine that with the fact that Mr. Moody was in his 20s, I think Mr. Hubbard was 14. The fact that these people have now grown up and are now 30 and 34 and 36 years old, I think that lends to the credibility. They have seen the inside of a jail. They know what it's like now. They're no longer influenced solely by the exterior pressures of gang life. They understand and can weigh the difference between a free life and one constrained in prison. That sounds like an application for a commutation of sentence. Well, it's a suggestion, I suppose. But what I'm saying here, Your Honor, is counsel wants to argue that they lack credibility, that it's not enough. And I'm asking the Court to see that it is enough. If you look at the fact that this case occurred in 1988, and in 1990 is when these young men were testifying, they were so young, and they were so impressed by the gang life and what was going on. And if you look at it now, they're grown men, and they understand what they did was wrong, that they understand the perjured testimony that they gave 27 years ago and the impact that it's had. And if you take that and you combine it with the totality of everything that was going on, the alibi, the witnesses that came in, the note, the fact that Tillett didn't testify at the trial, and now he's saying that that's because he couldn't make the identification, in that whole totality there is credibility. And I am asking this Court to send this back down so that Mr. Moody can have the benefit of a test of the credibility of these witnesses. Thank you so much. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the Court.
judges: Rawlinson, N.R. Smith, Korman